The UNITED STATES of
America, Plaintiff,

v.

ALPINE LAND & RESERVOIR
COMPANY, a corporation,
et al.

No. CV–D–183 BRT.

United States District Court,
D. Nevada.

Aug. 6, 1991.

Fred Disheroon, Dept. of Justice, Land & Natural Resources, Washington, D.C., for plaintiff.

Robert W. Marshall, Vargas & Bartlett, Reno, Nev., for defendants.

### DECISION

BRUCE R. THOMPSON, District Judge.

The Alpine Land & Reservoir Company (Alpine) has moved to amend the final decree dated October 28, 1980, 503 F.Supp. 877, to reflect the correct storage capaci-

ties of four reservoirs: Kinney Meadows (Claim No. 800), Lower Kinney Lake (Claim No. 802), Wet Meadows (Claim No. 803), and Lower Sunset (Claim No. 804). The United States has filed objections.

In this action a temporary restraining order prepared by Special Master John V. Mueller was entered by the court on September 18, 1951. That restraining order specified the capacities of the aforesaid reservoirs as follows: Kinney Meadows, 435 acre feet; Lower Kinney Lake, 495 acre feet; Wet Meadows, 207 acre feet; Lower Sunset, 250 acre feet. The four reservoirs in question are located in the State of California. The temporary restraining order made no provision for authorizing construction of or increasing or decreasing the storage capacities of such reservoirs.

On August 3, 1950, Alpine filed an application with the State of California Department of Public Works Division of Water Resources to construct works to increase the capacity of Lower Kinney Lake reservoir to 920 acre feet. The application was approved on September 8, 1950, and the approved works were constructed and the capacity increased accordingly.

On April 3, 1952, Alpine filed a similar application to increase the capacity of Wet Meadows reservoir to 450 acre feet and it was approved.

On July 8, 1949, Alpine filed a similar application to increase the capacity of Kinney Meadows reservoir to 900 acre feet and it was approved.

On April 3, 1952, Alpine filed a similar application to increase the capacity of Lower Sunset reservoir to 860 acre feet and it was approved.

On July 14, 1958, the Special Master filed Amended Proposed Findings of Fact, Conclusions of Law and Decree which expressly recognized and adopted the increased reservoir capacities of the four reservoirs in question. Thereafter the court set and reset the dates for filing objections to the report of the Special Master as amended and numerous objections were filed but the objections were never acted upon and resolved until the case was reactivated in the early 1970's. Meanwhile, waters were stored in and diverted from the four reservoirs in accordance with the capacities authorized by the Amended Proposed Findings of·Fact, and Conclusions of Law and Decree filed by the Special Master. This use of water has continued from 1958 until today. The present problem is caused by the fact that when Special Master John V. Mueller entered the amended findings he made no supplementary evidentiary record (i.e. the California certificates) to support the amended findings.

In 1973, an attorney from the Department of Justice visited the court and suggested that this case should be reactivated and concluded. Accordingly, because such a long time had expired and the parties in interest had changed, notices were served and new times were fixed for filing objections to the report and findings and amended report and findings of the Special Master. The United States filed objections to the amended findings and proposed decree respecting the storage capacities of the four reservoirs in question upon the ground that there was no evidentiary support in the record for the increased capacities. Interim proceedings were had and orders entered resulting in the submission of the objections to the reports and findings of the Special Master on a written record consisting of the exhibits and testimony before the Special Master, supplemented by affidavits and exhibits filed on behalf of the parties and written briefs. The court's rulings on the objections to the Special Master's Findings on Acreage and Priorities were filed (with the Final Decree) on October 28, 1980. During all the foregoing proceedings between 1973 and 1980 Alpine did not participate and failed to come forward with its proofs of increased storage capacity. On January 14, 1991, Alpine, having been apprised of the possibility that it might be restricted to the storage capacities defined in the 1951 temporary restraining order, elected to file the instant petition to amend the Final Decree pursuant to Rule 60(b) Fed.R.Civ.P. and the court's reservation of jurisdiction.

The objections of the United States are procedural and jurisdictional—most of them sound and well reasoned.

Rule 60(b) Fed.R.Civ.P. provides:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

■ Alpine contends that because this court reserved jurisdiction to "modify, amend, eliminate, add to or change any provision of this decree" there is no problem. This is not so. Such a reservation of jurisdiction is intended to speak prospectively to enable the court to modify the decree in the light of changed conditions not pertaining at the time of its entry. The provision does not permit relitigation of decided issues, else there would never be any finality to the proceedings. The United States correctly contends that the 1980 Final Decree is res judicata. *Nevada v. United States*, 463 U.S. 110, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983).

Alpine suggests that the United States will not be prejudiced, or adversely affected, by the remission of the reservoir capacities to their original entitlement; in a sense, that it has no standing to object. But this is patently not so. Any increase of decreed rights upstream from Lahontan reservoir will adversely impact the water entitlement of the United States in and below Lahontan reservoir.

Alpine also argues that it has been misled by officers of the court into a posture of inactivity, and cites inapposite authority in support. Alpine, however, cannot point to a single factor of misrepresentation which resulted in Alpine's failure and neglect to submit its opposition to the government's objections to the reservoir capacities prior to entry of the Final Decree in 1980.

Nevertheless, every judgment and decree of a federal court is pervious to a properly supported motion under Rule 60(b) Fed. R.Civ.P. and in this case, in the opinion of this court, Alpine has established facts which entitle it to relief under Rule 60(b) Fed.R.Civ.P.

There are six (6) subclauses in Rule 60(b). Admittedly, grounds (1), (2) and (3) are inapplicable to this case because of lack of factual support and because of the lapse of time. Ground (4) "that the judgment is void" is not relevant. Ground (5) that "it is no longer equitable that the judgment should have prospective application" cannot be applied in the light of the decision and discussion in *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 911 F.2d 363 at 365 (9th Cir.1990):

> Many cases since *Swift* have reiterated *Swift's* restrictions on the district court's inquiry on a motion to modify a permanent injunction:
>
> > [M]odification is only cautiously to be granted; ... some change is not enough; ... the dangers which the decree was meant to foreclose must

almost have disappeared; ... hardship and oppression, extreme and unexpected, are significant; and ... the movants' task is to provide close to an unanswerable case. *To repeat: caution, substantial change, unforeseenness, oppressive hardship, and a clear showing are the requirements.* *Humble Oil & Refining Co. v. American Oil Co.*, 405 F.2d 803, 813 (8th Cir.), *cert. denied,* 395 U.S. 905, 89 S.Ct. 1745, 23 L.Ed.2d 218 (1969) (emphasis added).

So, we are relegated to ground (6) "any other reason justifying relief from the operation of the judgment."

■ The government's position with respect to Rule 60(b)(6) is ambiguously argued and difficult to understand. The best we can make of it is that the government contends that the express abolition of writs of coram nobis, coram vobis, audita querela and bills of review and bills in the nature of bills of review abolished not only those common law remedies but the principles which generated the remedies as well. We adopt the opposite viewpoint and agree with the courts which have held that the purpose of subdivision (6) "any other reason justifying relief from the operation of the judgment" is to bring within the remedial scope of Rule 60(b) the principles justifying relief from a judgment by use of the procedural writs which were expressly abolished and which were enforceable at common law.

The general principles are stated in authoritative texts:

Federal Practice and Procedure, Wright and Miller, Vol. II, p. 237, § 2867:

Though the rule puts an end to the niceties of the writs, it retains the substance. Relief is now available, either by motion or in an independent section, in any situation in which it could have been had by one of the ancient remedies. And nomenclature is unimportant, so that an application that is mistakenly designated as being for one of the old writs will be treated as a motion under this rule.

18 Am.Jur.2d "Coram Nobis," p. 633, § 13:

Coram nobis may be granted only when the record discloses errors of fact of such fundamental character as to render the proceeding itself irregular and invalid, or to compel 'action to achieve justice.'

The Supreme Court of the United States in *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), declared the writ of error coram nobis to be alive and viable to correct an error of fact in a criminal case despite the remedies covered by 28 U.S.C. § 2255. That the contention had been made and rejected that Rule 60(b) Fed.R.Civ.P. had expressly abolished the writ of error coram nobis in both its procedural and substantive aspects is made clear by the first sentence in the dissenting opinion in the *Morgan* case.

Although coram nobis has been frequently invoked in a criminal setting, there are few opportunities to apply coram nobis in civil litigation. The application of Rule 60(b)(6) to civil litigation was discussed in *Bankers Mortgage Company v. United States,* 423 F.2d 73 (5th Cir.1970):

In its present form, 60(b) is a response to the plaintive cries of parties who have for centuries floundered, and often succumbed, among the snares and pitfalls of the ancillary common law and equitable remedies. It is designed to remove the uncertainties and historical limitations of the ancient remedies but to preserve all of the various kinds of relief which they offered.

*In the Matter of Brown,* 68 F.R.D. 172 (D.C.D.C.1975), Rule 60(b)(6) was held applicable to a motion to set aside commitments to a mental hospital.

■ The substantive requirements of a writ of error coram nobis are correctly stated in 18 Am.Jur.2d "Coram Nobis" pp. 629–30:

A number of general conditions precedent must exist before coram nobis relief can be granted, regardless of the specific ground or grounds upon which application for relief is based. Ordinarily coram nobis is employed, in cases where there is no other remedy, for the purpose of reviewing, correcting, or vacating a judgment in the same court in which it was

rendered, on account of an error of fact, where such error:

—is extrinsic to, or does not appear in, the record;

—affects the validity and regularity of the proceedings;

—was not put in issue at the trial;

—was unknown at the time of the trial to the party seeking relief without fault on his part;

—was unknown to the trial court;

—was not passed upon by the court;

—if known, would have prevented rendition of the judgement.

We view this as a proper case for use of coram nobis. There is no other remedy to correct the Alpine Decree because of an error of fact. The error is extrinsic to and does not appear in the record, it was not put in issue at the trial, it was unknown to Alpine at the time of the trial without fault, it was not passed upon by the trial court, and if known the judgment would have been different. Also, exceptional circumstances are here present which "compel action to achieve justice." *U.S. v. Morgan* (*supra*).

The exceptional circumstances are these: the proofs of increased reservoir capacities were presented to the Special Master but were not made part of the evidentiary record; the proofs persuaded the Special Master to file amended proposed findings of fact, conclusions of law and decree; the reservoirs were filled and waters therefrom distributed for over twenty years in accordance with the increased capacities; the increased capacities are established by incontestable documentary evidence (the California certificates), and the correction of factual error is not dependent upon the credibility or quality of memory of any witness.

Probably the weakest link in the chain is a determination of lack of fault or negligence on the part of Alpine. We find, however, that the recitation, *supra*, of exceptional circumstances establishes justification for Alpine's failure to contest the government's objections to the reservoir capacities. There was nothing in the form of any of the objections made prior to the entry of the Final Decree in this action which would have given specific notice to Alpine that its reservoir capacities were in jeopardy. A careful review by an employee or agent of Alpine of every objection filed would have been required. The standard is ordinary care of a normally careful and prudent person, and in the context of the years of recognition and compliance with the amended findings and decree, we find Alpine's conduct to be consistent with the exercise of ordinary care under the circumstances.

The government argues that the Final Decree is res judicata and cannot lightly be subjected to Rule 60(b) motions to modify. We agree. It is a strange and unusual case, indeed, which will justify the invocation of Rule 60(b)(6) to correct an error. Only where the correct duty of water and use of water were recognized by the temporary restraining order, and the supporting proofs are documentary and conclusive, will corrective action be considered. This is such a case. It represents a very slight breach in the dike of res judicata.

In consideration of the premises,

IT HEREBY IS ORDERED, ADJUDGED AND DECREED that the Alpine Final Decree entered on October 28, 1980 hereby is amended as follows:

*Claim Number 800* Kinney Meadows Reservoir, the reservoir capacity acre feet is increased to 900 acre feet.

*Claim Number 802* Lower Kinney Lake Reservoir, the reservoir capacity acre feet is increased to 920 acre feet.

*Claim Number 803* Wet Meadows Reservoir, the reservoir capacity acre feet is increased to 450 acre feet.

*Claim Number 804* Lower Sunset Reservoir, the reservoir capacity acre feet is increased to 860 acre feet.