**UNITED STATES of America, Plaintiff–Appellant,**

v.

**ALPINE LAND & RESERVOIR, CO., Defendant–Appellee.**

No. 91–16555.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1992.

Decided Jan. 29, 1993.

Barry M. Hartman and David Shilton, U.S. Dept. of Justice, Washington, DC, for plaintiff-appellant.

Rew R. Goodenow and Robert W. Marshall, Vargas & Bartlett, Reno, NV, for defendant-appellee.

Before SCHROEDER and CANBY, Circuit Judges, and LEW,[*] District Judge.

SCHROEDER, Circuit Judge:

This matter represents yet another chapter in the litigation over rights to the waters of the Carson and Truckee Rivers. *See, e.g., Nevada v. United States,* 463 U.S. 110, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983); *United States v. Alpine Land & Reservoir Co.,* 697 F.2d 851 (9th Cir.), *cert. denied,* 464 U.S. 863, 104 S.Ct. 193, 78 L.Ed.2d 170 (1983). We are here concerned with a 1980 decree that comprehensively adjudicated rights to the use of the waters of the Carson River. That decree set forth, inter alia, the amount of water that Alpine Land & Reservoir Company ("Alpine"), one of the defendants in the adjudication, was entitled to store in each of its four upstream reservoirs. In 1991, Alpine sought a modification of that decree pursuant to Rule of Civil Procedure 60(b)(6) so as to increase its storage rights. The United States now appeals the district court's decision to grant that motion. *United States v. Alpine Land & Reservoir Co.,* 769 F.Supp. 1142 (D.Nev.1991).

The district court opinion contains most of the background of this dispute. Briefly summarized, the record demonstrates that Alpine has owned the four reservoirs in question since 1895. Alpine increased the storage capacities of the reservoirs in the late 1940s and early 1950s after obtaining the proper certificates from the California State Department of Public Works. The original action regarding the water rights to the Carson River was handled by a Special Master. Alpine submitted the certificates to the Special Master, but they apparently were never made part of the evidentiary record. The Special Master's report, however, contained findings authorizing Alpine to increase the storage capacity of the reservoirs. Alpine continued to utilize the higher capacities.

In 1973, the United States filed objections to the Special Master's findings. One of the objections contested Alpine's reservoir capacity on the ground that there was no evidence in the record to support the increased capacities. In 1980, the findings of the Special Master were modified by the district court. *See United States v. Alpine Land & Reservoir Co.,* 503 F.Supp. 877 (D.Nev.1980). The modifications included lowering the storage entitlements of the four Alpine reservoirs. The court did so because it could not find the certificates upon which the Special Master based its finding of increased storage capacity.

Alpine did not participate in the proceedings after 1973, and did not appeal or seek reconsideration of the 1980 judgment until 1991. Alpine argues that it did not know that its reservoir entitlements were in jeopardy before that time. The district court agreed, stating that "[a] careful review [of all the government's objections] by an employee or agent of Alpine would have been required" and that Alpine's failure to do so was "consistent with the exercise of ordinary care under the circumstances." *Alpine Land,* 769 F.Supp. at 1146.

The facts demonstrate that in 1983 Alpine's president became aware that the 1980 decree changed the findings of the Special Master with regard to the storage entitlements of Alpine's reservoirs. Alpine's board of directors hired an attorney, who, with Alpine's president, met with the court-appointed Water Master who administered the final decree. The Water Master assured Alpine that the error in the final decree would be "remedied administratively."

In 1984 a new Water Master took over. Alpine continued to operate its reservoirs at full capacity until 1990. At that time,

---

[*] Honorable Ronald S.W. Lew, United States District Judge for the Central District of California, sitting by designation.

the new Water Master advised Alpine that authorized capacity might be cut back. Alpine then instituted the present action.

The record before the district court does not reflect any irregularities in the notice provided to Alpine of the government's 1973 objections. Nor is there any contention that the district court's 1980 decision upholding the government's objection to Alpine's storage entitlement was not properly served on Alpine. The record does not reveal any reason for Alpine's failure to respond to the 1973 objections. Alpine could have sought timely reconsideration of the 1980 decree pursuant to Federal Rule of Civil Procedure 59 or other provisions of Rule 60. It appears that Alpine's delay is the result of a misperception of the impact of the government's objections on Alpine's interest. As stated above, the district court nonetheless held that Alpine's neglect was not the result of a lack of diligence given the circumstances. The district court apparently believed that requiring an employee of Alpine to read the entire lengthy set of objections and decree so as to know the decree's adverse impact was a burden great enough to render Alpine's delay reasonable. *Id.*

The issue that we must decide is whether the district court abused its discretion by granting relief under Rule 60(b)(6). In relevant part, Rule 60(b) provides "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons .... (6) any other reason justifying relief from the operation of the judgment."

■ Rule 60(b)(6) has been used sparingly as an equitable remedy to prevent manifest injustice. The rule is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment. For example, in *Klapprott v. United States*, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949), the Court upheld the use of the rule to set aside a default judgment in a denaturalization proceeding because the petitioner had been ill, incarcerated, and without counsel for the four years following the judgment. Conversely, in *Ackermann v. United States*, 340 U.S. 193,

71 S.Ct. 209, 95 L.Ed. 207 (1950), the Court held that Rule 60(b)(6) should not be invoked where the petitioner bypassed his right to appeal for tactical reasons. In its most recent discussion of the rule, the Supreme Court held that Rule 60(b)(6) relief was available to a litigant against whom judgment was entered by a judge who had improperly refused to recuse himself in the proceeding. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). The Court reiterated that Rule 60(b)(6) relief may be had "to accomplish justice," but only under "extraordinary circumstances." *Id.* at 864, 108 S.Ct. at 2204.

■ Our review of cases in this and other circuits illustrates that the courts of appeal have heeded the Supreme Court's admonitions regarding Rule 60(b)(6); such relief is available only where extraordinary circumstances prevented a litigant from seeking earlier, more timely relief. Although the timeliness of a Rule 60(b)(6) motion "depends on the facts of each case," relief may not be had where "the party seeking reconsideration has ignored normal legal recourses." *In re Pacific Far East Lines, Inc.*, 889 F.2d 242, 249, 250 (9th Cir.1989) (holding relief appropriate where new legislation undermined the soundness of the judgment). *See also United States v. Holtzman*, 762 F.2d 720 (9th Cir.1985) (five year delay permissible where litigant reasonably interpreted an injunction to authorize litigant's conduct and timely relief was sought upon receipt of notice to the contrary); *Rivera v. Puerto Rico Tel. Co.*, 921 F.2d 393 (1st Cir.1990) (twenty-three day delay permitted because party not properly notified of pending motion); *J.D. Pharmaceutical Distrib., Inc. v. Save–On Drugs & Cosmetics Corp.*, 893 F.2d 1201, 1207 (11th Cir.1990) (relief from judgment granted because party never served with requests for admissions or motion for summary judgment). These cases demonstrate that Rule 60(b)(6) relief normally will not be granted unless the moving party is able to show both injury and that circumstances beyond its control prevented timely action to protect its interests.

■ Those circumstances do not exist in this case. At most, excusable neglect

might have been the basis for relief pursuant to Rule 60(b)(1) if Alpine had sought such relief within a year of the 1980 judgment. However, Rule 60(b)(6) is not a substitute for 60(b)(1). Moreover, there is no reason for holding litigants in complex water rights litigation to any lesser standard than litigants in other proceedings. Participants in water adjudications are entitled to rely on the finality of decrees as much as, if not more than, parties to other types of civil judgments. *See Nevada v. United States*, 463 U.S. at 128–30, 103 S.Ct. at 2917–18 (discussing the paramount concerns of finality, especially in water rights cases).

The order of the district court is reversed and the matter remanded for entry of an order denying Rule 60(b)(6) relief.

REVERSED AND REMANDED.