Kamal KHAN, Ins No. A20–
258–532, Petitioner,

v.

Adele J. FASANO, San Diego District
Director, Immigration and Natural-
ization Service, Respondent.

No. 01–CV–0912–K(JFS).

United States District Court,
S.D. California.

Dec. 21, 2001.

Kamal Makbool Khan, El Centro, CA, Pro se.

U.S. Attorney CV, U.S. Attorneys Office Southern, District of California, Civil Division, San Diego, CA, for Respondent.

ORDER GRANTING RESPONDENT'S
MOTION TO ALTER OR AMEND
JUDGMENT [15]

ORDER DENYING PETITIONER'S
PETITION FOR WRIT OF
HABEAS CORPUS [1]

ORDER DENYING PETITIONER'S
MOTION TO COMPEL [17]

KEEP, District Judge.

On October 26, 2001, the Court granted Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and ordered Petitioner released subject to reasonable conditions of supervision as determined by the INS. Pursuant to the

Court's order, which authorized reasonable conditions of release, including bail, the INS imposed a $3000 bail requirement on Mr. Khan on November 5, 2001. Unable to meet that amount, he has remained in INS custody. On November 13, 2001, Respondent filed the instant motion to alter or amend the Court's judgement. That same day, Petitioner filed the instant motion to compel Respondent to release him pursuant to the Court's order, specifically without imposition of bail.

## I. Background

### A. Facts as of the Court's October 26, 2001 Order

Petitioner, a native of Pakistan, is a former lawful permanent resident who is subject to deportation as a result of a criminal conviction for possession of methamphetamine. He entered INS custody on April 14, 1999. On February 24, 2000, an immigration judge ordered him removed to Belgium, or in the alternative to Pakistan. Petitioner appealed the deportation order, but withdrew the appeal on January 29, 2001, making the order administratively final that same day. The Consulate General of Belgium formally denied Respondent's request for issuance of a travel document to effect the removal of Petitioner on March 14, 2001. On March 2, 2001, the INS requested travel documents from the Consulate General of Pakistan. On May 30, 2001, the Pakistan Consulate indicated to the INS that Petitioner's travel document application had been forwarded to the appropriate ministry in Pakistan and is currently pending approval.

On August 1, 2001, Respondents issued a final administrative decision to continue Petitioner's detention. As of October 25, 2001, Petitioner had been in custody over two and one-half years, and over 260 days since the removal order became final. On October 26, 2001, the Court granted Mr. Khan's petition and ordered him released, subject to reasonable conditions of supervision.[1]

### B. Facts Newly Before the Court

In its motion to alter or amend the Court's order granting Petitioner's habeas corpus petition, the government brings forward new facts which materially alter the Court's analysis. In light of the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), the INS has established new procedures for evaluating the likelihood of repatriation for those individuals detained past the presumptively reasonable six-month detention period. Pursuant to these new administrative procedures, the INS determined that Petitioner cannot show that repatriation is unlikely in a November 1, 2001 letter to Petitioner. In making its determination, the INS relied upon a scheduled future meeting (date not provided) between INS officials and the Pakistani Consulate to discuss Petitioner's case, as well as others. Furthermore, in fiscal year 2000 and the first half of fiscal year 2001, the INS successfully repatriated 476 Pakistani nationals. The INS concluded that there were no institutional barriers to the repatriation of Pakistani nationals in general, and no known barriers to the repatriation of Mr. Khan in particular.

## II. Discussion

### A. Legal Standard

██ Under Federal Rule of Civil Procedure 59(e), 60(b) and Local Rule 7.1(i)(1),

---

1. Pursuant to the Court's order, which authorized reasonable conditions of release, including bail, the INS imposed a $3000 bail on Mr. Khan on November 5, 2001. Unable to meet that amount, he has remained in INS custody. Accordingly, he has brought a motion to compel the INS to release him subject to conditions of release that he is capable of fulfilling.

the Court may reconsider and relieve a party from a final order. Reconsideration is appropriate "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in the controlling law." *School Dist. No. 1J. Multnomah County, Oregon v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993), *cert. denied*, 512 U.S. 1236, 114 S.Ct. 2742, 129 L.Ed.2d 861 (1994). A party cannot have relief under this rule merely because he or she is unhappy with the judgment. Wright and Miller, *Federal Practice and Procedure*, section 2858 at 170. In fact, Rules 60(b)(6) and 59(e) are used only "sparingly as an equitable remedy to prevent manifest injustice." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir.1993).

### B. Petitioner Has Not Met His Burden Under *Zadvydas*

In *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), the Supreme Court addressed the permissible length of detention of an alien once his removal had been authorized. In the factual circumstances before the Court, there was *no* country that would accept the aliens. One alien before the Supreme Court, Zadvydas, was "stateless", a citizen of no country as he had been born in a displaced persons camp at the end of World War II; no country would accept him. The other alien before the Court in *Zadvydas* was Kim Mo Ha, a citizen of Cambodia. The United States did not have a repatriation agreement with Cambodia and Cambodia refused to accept him. These two individuals faced detention that appeared to be "indefinite and potentially permanent". The Court ruled that post-removal-detention is presumptively reasonable for six months. Past six months, an alien must be released, subject to reasonable conditions of supervision, if he

shows that there is no reasonable likelihood of his repatriation. *Id.* at 2505. *The burden is on the alien to show that there is no reasonable likelihood of repatriation. Id.* ("This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.").

As recounted above, the government has provided significant new information, particularly that progress is being made for the deportation of Mr. Khan and that there are no institutional barriers to his deportation. As the government correctly contends, there are two ways in which an alien's detention may appear to be "indefinite and potentially permanent" such that release is warranted. First, there may be institutional barriers to repatriation to the country in question. For example, for Kim Mo Ha in *Zadvydas*, the United States had no repatriation agreement with Cambodia and Cambodia categorically refused to accept any repatriations. Or, there may be problems with the deportation of the individual alien. For example, Zadvydas himself was "stateless" and thus there was no country to which to repatriate him and no country willing to accept such a stateless individual.

As of the Court's order on October 26, 2001, Belgium had specifically refused to accept Mr. Khan. Travel documents had been requested from Pakistan but the government provided no information on which the Court could evaluate the status of those efforts. Requesting a stay of the Court's consideration of the habeas corpus petition, the government contended that the INS was developing new administrative mechanisms in light of *Zadvydas* to evaluate the likelihood of repatriation of

aliens confined longer than six months. However the government provided no details beyond the assertion itself. On this basis, the Court granted Mr. Khan's petition for writ of habeas corpus and ordered him released, subject to reasonable conditions of supervision.

The government has now provided the necessary information which was lacking before. The INS has instituted new administrative procedures and a specialized unit, the INS Headquarters Post–Order Detention Unit (HQPDU), has been constituted to review the detention of aliens past the presumptively reasonable six months. Conducting such a review of Mr. Khan's case, the HQPDU has determined that, as of November 1, 2001, there is no evidence to suggest that there is not a significant likelihood of repatriation in the foreseeable future. There are no institutional barriers to removal: in fiscal year 2000 and the first half of fiscal year 2001, the INS successfully repatriated 476 Pakistani nationals. The HQPDU found that there is no evidence to suggest that there are any individual barriers to removal. Travel documents were requested from Pakistan, and there is currently an upcoming scheduled meeting (date not provided) between the INS and the Pakistani Consulate to discuss several cases, including that of Mr. Khan.

The Court agrees with the conclusions of the November 1, 2001 HQPDU letter, though with reservations. Given the large number of Pakistani nationals successfully repatriated over the last 18 months, there are no institutional barriers to the repatriation of aliens to Pakistan. Petitioner argues that this number is meaningless without knowing the larger context of those the INS is seeking to repatriate. The Court rejects this argument. While knowing the overall number of individuals the government is trying to repatriate to Pakistan during the time period in question would give a fuller statistical picture, such numbers are not necessary. The numbers are significantly large that the Court cannot conclude that there are any *institutional* barriers to the repatriation of aliens to Pakistan. Likewise, Petitioner has made no showing that there are any *individual* barriers to his repatriation to Pakistan; he bases his argument on the rejection of the Belgian Consulate and the lack of visible progress since the request of travel documents from Pakistan. This does not meet his burden of showing that there is no significant likelihood of removal; it simply shows that the bureaucratic gears of the INS are slowly grinding away. Progress, however slow, is being made on his individual case: travel documents have been requested and there is a scheduled meeting with the Pakistani Consulate to discuss Mr. Khan's status. The HQPDU is a specialized unit within the INS constituted to do just these determinations, and such administrative expertise, particularly in the context of immigration, deserves significant deference from the judiciary. *See INS v. Aguirre–Aguirre*, 526 U.S. 415, 425, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) ("judicial deference to the Executive Branch is especially appropriate in the immigration context"). The Court therefore GRANTS Respondent's motion to alter or amend the Court's judgment of October 26, 2001 and the Court DENIES Petitioner's habeas corpus petition. However, the Court notes with concern that the date of the upcoming meeting between INS and the Pakistani Consulate is not specified in the government's briefs. The underlying concern of the Supreme Court in *Zadvydas* was that aliens not be kept in detention for an "indefinite and potentially permanent" duration. Accordingly, while the Court dismisses the habeas corpus petition, the Court grants Mr. Khan leave to refile his petition in six months' time if his removal has not then been effectuated.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Respondent's motion to alter or amend judgement, **DENIES** Petitioner's petition for writ of habeas corpus, and **DENIES** Petitioner's motion to compel. IT IS SO ORDERED.