CALLAHAN, Circuit Judge,
dissenting:
I agree with the majority that this case is “rare and extraordinary” but not for the reasons it cites. What is extraordinary is that this court repeats the error of Sherrors v. Woodford, 425 Fed.Appx. 617 (9th Cir. 2011), which granted the habeas petition of Hall’s co-defendant Ronnie Sher-rors based on the same supposed instructional error, even in the face of additional facts demonstrating that Sherrors was wrongly decided. Sherrors was retried without the suspect instruction and, unsurprisingly, was again convicted of first degree murder and sentenced to life imprisonment without the possibility of parole. People v. Sherrors, 2014 WL 6907990, at *1 (Cal. Ct. App. Dec. 9, 2014). In granting Hall’s petition, the court not only ignores this reality, but invents an error of constitutional magnitude where none exists. To be sure, the instructional error Hall claims is an error of state law only. In finding a due process violation warranting habeas relief, the majority brushes aside the AEDPA standards and the Supreme Court’s repeated instructions that we must defer to reasonable state court decisions. See, e.g., Davis v. Ayala, — U.S. -, 135 S.Ct. 2187, 2199, 192 L.Ed.2d 323, reh’g denied, — U.S. -, 136 S.Ct. 14, 192 L.Ed.2d 983 (2015). The weighty evidence against Hall only underscores the extent to which the majority contrives to reach its result.
Nor is Hall deserving of relief under Rule 60(b). Hall knowingly caused his own petition to be disinissed, and, of his own accord, failed to take any action on that dismissed federal habeas petition for three years. Indeed, he waited until after Sher-rors procured habeas relief before seeking leave to reopen his own case. The state explained at oral argument that, because Hall had clearly abandoned his own efforts to, pursue habeas relief, he was not retried with Sherrors. Reopening his ease imper-missibly rewards his inaction and gamesmanship, and unfairly imposes the cost of his retrial on the state.
I therefore respectfully dissent.
I
Hall and Sherrors stole a car that Steve Foth was driving. They forced Foth into the trunk of the car and drove out to a dark street. There, accompanied by Lena Hixon, they pulled Foth out of the trunk and began stabbing him. Foth sustained approximately eighty-three stab wounds and bled to death. Hall and Sherrors stripped Foth’s body naked, discarded it in some bushes, and drove away.
Hall and Sherrors were tried and convicted in state court of first degree murder while using a deadly weapon, and with the special circumstance of murder during the course of a robbery. At trial, the jury was instructed with CALJIC Ño. 2.15, which states:
If you find that a defendant was in possession of recently stolen property, the fact of that possession is not by itself sufficient to prove an inference that the defendant is guilty of the crime of murder. Before guilt may be inferred, there must be corroborating evidence tending to prove a defendant’s guilt. However, this corroborating evidence need only be slight and need not by itself be sufficient to warrant an inference of guilt.
As corroboration, you may consider the attributes of possession — time, place and manner; that the defendant had an opportunity to commit the crime charged; *995 the defendant’s conduct; his false or contradictory statements, if -any; and any other statements that may have been made with reference to the property.
Each defendant received a sentence of life without the possibility of parole, plus one year.
Hall appealed the judgment to the California Court of Appeal, which affirmed the judgment in an unpublished decision. The Court of Appeal assessed whether it was error to have instructed the jury pursuant to CALJIC No. 2.15, but assessed this error under the harmless error test of People v. Watson, 46 Cal. 2d 818, 299 P.2d 243 (1956), California’s state-law harmless error standard, rather than the constitutional harmless error test of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The Court of Appeal concluded that it was an error of state law, but that error was harmless. The opinion did not touch on Hall’s federal due process claim. Hall then filed a petition for review in the California Supreme Court, arguing that the Court of Appeal erred by applying Watson rather than Chapman. The California Supreme Court summarily denied the petition.
In 2005, Hall filed a Petition for Writ of Habeas Corpus in the district court pursuant to 28 U.S.C. § 2254, challenging his conviction. He then filed a First Amended Petition which raised not only his claim related to CALJIC No. 2.15, but also an additional claim, related to a different jury instruction,' CALJIC No. 8.81.17. When the state moved to dismiss the petition on the ground that the claim related to CALJIC No. 8.81.17 was unexhausted, Hall requested that the district court stay his case so that he could present his unex-hausted claim to the state courts. This request was denied. The district court advised Hall that he could either “voluntarily dismiss his entire federal petition and return to state court to exhaust his unex-hausted claims,” or “formally abandon his unexhausted claim and proceed with his exhausted claims.” Hall was explicitly informed by the district court that if he chose to proceed with his exhausted claims, “he must file a pleading entitled ‘Formal Abandonment of Unexhausted Claim’ with this Court no later than 30 days after the District Judge issues his decision.” The district court informed Hall that he was “presented with the options stated above to avoid dismissal of his petition.” Hall requested an extension of time to file a formal abandonment of his unex-hausted claim, which was granted. But Hall never submitted a notice of formal abandonment or any other filing in response to the district court’s order. Hall’s mixed petition was therefore dismissed without prejudice and the case was terminated.
Hall’s co-defendant Sherrors also filed a Petition for Writ of Habeas Corpus in 2005, challenging his own conviction. In May 2007, well after the dismissal of Hall’s petition, the district court conditionally granted the writ, and the state appealed that decision. It was not until almost two years latér — and over three years after the district court’s dismissal of Hall’s petition — that Hall filed a “Motion to Join Case of Co-Defendant” in the district court. The district court treated this filing as a motion to reopen Hall’s original habe-as petition. The district court deemed “consideration of the matter” premature while the decision granting Sherrors’s petition was on appeal, and denied the motion “without prejudice to refile the motion once the Court of Appeals for the Ninth Circuit issues a final decision in Sherrors’s habeas case.” When the Ninth Circuit affirmed the district court’s decision to grant Sherrors’s petition in 2011, Sherrors, 425 Fed.Appx. 617; see also id. at 621 (Calla *996 han, J., dissenting), Hall filed a “Motion to Join Case of Co-Defendant; Motion to ReOpen Case of Hall v. B. Cash” in the district court, seeking relief under Rule 60. The state opposed the motion, contending that Hall should be required to file a new petition. Hall, at that point proceeding pro se, filed a reply indicating that he would file a new petition. The court appointed counsel to represent Hall, and directed that Hall file a supplemental Motion to ReOpen Under Rule 60(b). Hall, through counsel, then filed a supplemental motion seeking relief under Rule 60(b)(6). The district court afforded Hall relief under Rule 60(b)(6), and found that habeas relief was warranted. The state appealed.
II
Rule 60(b)(6) entitles the moving party to relief from judgment for “any other reason that justifies relief’ and a motion invoking this rule must be filed “within a reasonable time ... after the entry of the judgment.” Fed. R. Civ. P. 60(b)(6), (c)(1). Our precedent is clear that “[w]e use Rule 60(b)(6) ‘sparingly as an equitable remedy to prevent manifest injustice.’ ” Lai v. California, 610 F.3d 518, 524 (9th Cir. 2010) (emphasis added) (quoting United States v. Alpine Land & Reservoir Co., 984 F.2d 1047, 1049 (9th Cir. 1993)). The Supreme Court has held, and we have recently reiterated, that “[t]o justify relief under Rule 60(b)(6), a party must show external ‘extraordinary circumstances’ suggesting that the party is faultless in the delay.” Washington v. Ryan, 833 F.3d 1087, 1099 (9th Cir. 2016) (en banc) (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P’ship, 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)); see also Gonzalez v. Crosby, 545 U.S. 524, 535, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005).
Hall does not come close to showing a “good reason for failing to take the action sooner,” United States v. Holtzman, 762 F.2d 720, 725 (9th Cir. 1985), or that he is “faultless in the delay,” Washington, 833 F.3d at 1099. Quite to the contrary, the record indicates that the fault lies with him alone. The majority’s characterization of this case as involving a “perfect storm” which “produced a situation in which Hall would have been subject to ‘manifest injustice’ if not for Rule 60(b)(6),” Op. at 987, is beyond generous; it is inventive. It was not outside forces, but Hall’s own conduct (or lack thereof), that “produced” this situation. Hall failed to notify the district court in 2006 of how he wished to proceed despite receiving notice that his petition would be dismissed if he did not affirmatively select one of the two options presented to him. Sherrors allegedly continued to advise Hall that he was filing “writs and motions” with Hall’s name included as a “co-submission.” Hall also asserts that he had a “good faith reason to believe his interests were included in any outcome of [Sherrors’s case].” But nothing in the record indicates that Hall held this belief at the time he failed to file a formal abandonment or otherwise take action on his own petition. And although both the district court and the majority accept Hall's assertion that Sherrors’s habeas petition was originally submitted to the district court on behalf of both Hall and Sherrors, reference to Sherrors’s habeas petition reveals no such co-submission. See Case No. 3:05-cv-01262-IEG-LSP, District Court Docket No. 1. What is more, Hall waited over three years to take action to join Sher-rors’s case.
Granting Rule 60(b)(6) relief under these circumstances not only contradicts our Rule 60 jurisprudence but blithely accepts Hall’s excuses for his inaction. Indeed, the conclusion that these facts “are the reason for Hall’s failure to comply with the district court’s January 25, 2006 order” finds *997 no support in the record. Op. at 988. Hall alone bears the responsibility for .the dismissal of his case and his three-year delay in seeking to reopen it. These facts compel me to conclude that the district court abused its discretion in finding “extraordinary circumstances” warranting relief under Rule 60(b)(6).
Ill
The majority compounds its mistake by finding an error of constitutional magnitude where none exists. “The Due Process Clause of the Fourteenth Amendment ‘protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.’ ” Francis v. Franklin, 471 U.S. 307, 313, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) (quoting In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). This principle “prohibits the [sjtate from using evidentia-ry presumptions in a jury charge that have the effect of relieving the [sjtate of its burden of persuasion beyond a reasonable doubt of every essential element of a crime.” Id. (citations omitted). “A permissive inference instruction allows, but does not require, a jury to infer a specified conclusion if the government proves certain predicate facts. Although such an instruction does not shift the burden of proof, it violates due process ‘if the sug1 gested conclusion is not one that reason and common sense justify in light of the proven facts before the jury.’ ” United States v. Warren, 25 F.3d 890, 897 (9th Cir. 1994) (quoting Francis, 471 U.S. at 314-15, 105 S.Ct. 1965). An instructional error rises to the level of a constitutional violation if “the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.” Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (citations omitted).
Here, the California Court of Appeal addressed the merits of Hall’s instructional-error claim only as an error of state law, and found that any error was harmless under Watson, 46 Cal. 2d 818, 299 P.2d 243. The California Court of Appeal did not expressly address Hall’s claim that this instructional error violated his due process rights. Hall then petitioned to the California Supreme Court, claiming that the Court of Appeal erred in applying Watson, 46 Cal. 2d 818, 299 P.2d 243, rather than Chapman, 386 U.S. at 24, 87 S.Ct. 824. The California Supreme Court summarily denied Hall’s petition.
“When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits .... ” Johnson v. Williams, 568 U.S. 289, 133 S.Ct. 1088, 1096, 185 L.Ed.2d 105 (2013). Here, we may assume that Hall’s due process claim was adjudicated on the merits, although neither the California Court of Appeal nor the California Supreme Court expressly addressed it. The Supreme Court has directed that Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), governs our analysis in this circumstance. Williams, 133 S.Ct. at 1096. Thus, “[ujnder § 2254(d),” we “must determine what arguments or theories ... could have supported ... the state court’s decision; and then ... must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.”[1] Harrington, 562 U.S. at 102, 131 S.Ct. 770 (emphasis added).
*998 Hall does not come close to satisfying this standard. The Court of Appeal could have determined that the permissive inference instruction given at Hall’s trial did not so infect the entire trial that his conviction violates due process, and fairmind-ed jurists could disagree about the correctness of this determination. In reaching the opposite conclusion, the majority “col-laps[es] the distinction between ‘an unreasonable application of federal law’ and what [the majority] believes to be ‘an incorrect or erroneous application of federal law.’ ” Nevada v. Jackson, — U.S. -, 138 S.Ct. 1990, 1994, 186 L.Ed.2d 62 (2013) (emphasis in-original) (quoting Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).
People v. Prieto, 30 Cal. 4th 226, 133 Cal.Rptr.2d 18, 66 P.3d 1123 (2003), does not support the conclusion that giving CALJIC No. 2.15 violated Hall’s due process rights. Instead, Prieto found that “application of CALJIC No. 2.15 to nontheft offenses like rape and murder” is improper under California state law. Id. at 248, 133 Cal.Rptr.2d 18, 66 P.3d 1123. The Prieto court explained that the instruction was an error under state law because “‘proof a defendant was in conscious possession of recently stolen property simply does not lead naturally and logically to the conclusion the defendant committed’ a rape or murder.” Id. at 249, 133 Cal.Rptr.2d 18, 66 P.3d 1123 (emphasis added) (quoting People v. Barker, 91 Cal. App. 4th 1166, 1176, 111 Cal.Rptr.2d 403 (2001)).[2] By contrast, a permissive inference instruction “is constitutional so long as the inference would not *999 be irrational.” Yates v. Evatt, 500 U.S. 391, 402 n.7, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991) (emphasis added) (citing Francis, 471 U.S. at 314-15, 105 S.Ct. 1965). An inference may be “rational” -without “flowing naturally and logically,” and the constitutional error standard thus presents a lower hurdle for an instruction to clear.
The California Supreme Court reached this same conclusion when it considered whether CALJIC No. 2.15 created an improper permissive inference in violation of a defendant’s due process rights. People v. Moore, 51 Cal. 4th 1104, 1132, 127 Cal.Rptr.3d 2, 253 P.3d 1153 (2011). The Moore court explained: “Although we concluded in Prieto that the connection between a defendant’s guilt of nontheft offenses and his or her possession of property stolen in the crime is not sufficiently strong to warrant application of the slight corroboration rule, this does not mean that drawing a connection between possession and guilt is irrational.” Id. (emphasis added). The court stated that it “[could not say], therefore, that it would have been irrational for the jury ... to draw an inference of defendant’s guilt of the ... murders from his possessing their property soon after the murders when there was other slight corroboration of guilt, especially when it is likely the same person ■ or persons who killed the victims also took their belongings.” Id. (emphasis in original) (citation omitted). This reasoning, although not binding on this court, is logically sound, and supports a finding that the state court could have reasonably determined that giving the jury CALJIC No. 2.15 was not a constitutional error, and that fairminded jurists could disagree with the correctness of this result.
The majority concludes the opposite, and finds that the jury instruction violated Hall’s due process rights. Op. at 990-91. The majority finds not only that the state court erred in concluding that this error was one of state law only, but that this decision was objectively unreasonable. Op. at 991. In doing so, the majority repeats the error that we are so often criticized for, and “treat[s] the unreasonableness question as a test of its confidence in the result it would reach under de novo review .... ” Harrington, 562 U.S. at 102, 131 S.Ct. 770.
The majority’s conclusion further ignores that we “determine the constitutionality of a permissive inference instruction on a case-by-case basis,” in the context of the trial at issue. United States v. Warren, 25 F.3d 890, 898 (9th Cir. 1994) (citing Ulster County v. Allen, 442 U.S. 140, 162-67, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979)). Reviewing the record evidence makes clear that it is rational to infer, from the evidence that Hall had Foth’s property in the days following Foth’s murder and the other corroborating evidence presented at trial, including Hixon’s detailed testimony, that Hall killed Foth. This inference is “one that reason and common sense justify in light of the proven facts before the jury,” and thus there was no constitutional violation. Francis, 471 U.S. at 315, 105 S.Ct. 1965.
Accordingly, the state court did not err, let alone unreasonably apply clearly established federal law, in rejecting Hall’s claim that instructing the jury with CALJIC No. 2.15 was a constitutional error. To the contrary, giving the jury this instruction was an error of state law only.
IV
Even assuming that instructing the jury with CALJIC No. 2.15 was not simply an error of state law, but was an error of constitutional magnitude, Hall is still not entitled to relief because any error was harmless.
*1000 Establishing that giving the jury CALJIC No. 2.15 violated his due process rights requires Hall to show both that the instruction’s “suggested conclusion [was] not one that reason and common sense justif[ied] in light of the proven facts,” Warren, 25 F.3d at 897, and that giving the instruction was not harmless beyond a reasonable doubt, see, e.g., Chapman, 386 U.S. at 24, 87 S.Ct. 824. Just as the state court’s denial of Hall’s federal claim could have been supported by the theory that giving CALJIC No. 2.15 was not a constitutional error, it also could have been supported by the theory that any constitutional error was harmless beyond a reasonable doubt.[3] And, as the Supreme Court made clear in Ayala, when a state court determines that an error was harmless beyond a reasonable doubt, that determination is entitled to AEDPA deference. 135 S.Ct. at 2199. We must therefore ask “whether it is possible fairminded jurists could disagree” with the correctness of the state court’s denial of Hall’s federal claim on the theory that any error was harmless beyond a reasonable doubt. Harrington, 562 U.S. at 102, 131 S.Ct. 770.
Of course, because this is a collateral proceeding, we must apply not only the KEIDPAJChapman standard of review, but also the standard set forth by Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), which requires a petitioner to establish “actual prejudice.” Id. at 637, 113 S.Ct. 1710. When assessing a state court’s harmlessness determination under this test, “relief is proper only if the . federal court has ‘grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury’s verdict.’ ” Ayala, 135 S.Ct. at 2197-98 (quoting O’Neal v. McAninch, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995)). “There must be more than a ‘reasonable possibility’ that the error was harmful.” Id. at 2198 (quoting Brecht, 507 U.S. at 637, 113 S.Ct. 1710). This standard “reflects the view that a ‘State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error.’ ” Id. (quoting Calderon v. Coleman, 525 U.S. 141, 146, 119 S.Ct. 500, 142 L.Ed.2d 521 (1998)). Importantly, as the Supreme Court cautioned us in Ayala, the Brecht standard does not “somehow abrogate!] the limitation on federal habeas relief that § 2254(d) plainly sets out.” Id. While we “need not ‘formally’ apply both Brecht and AEOPA/Chapman,’ AEDPA ... ‘sets forth a precondition to the grant of habeas relief.’ ” Id. (quoting Fry v. Pliler, 551 U.S. 112, 119-20, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007)). Thus, it is not enough to find actual prejudice under the Brecht standard; the Chapman/AEIDBK standard must also be met, and we must therefore accept a state court’s prior harmless error determination unless it involved such an “unreasonable” application of Supreme Court precedent that “no fairminded jurist” could agree with it. Ayala, 135 S.Ct. at 2199.
The majority applies the wrong standard, and in doing so, fails to afford the state court the deference it is due. The *1001 majority’s error here is threefold. It first ignores Harrington and Williams, and fails to ask what arguments could have supported the state court’s decision. It then repeats the error of Deck v. Jenkins, 814 F.3d 954 (9th Cir. 2016), and states that it need not review the state court’s decision for reasonableness under Chapman because “[a] determination that the error resulted in ‘actual prejudice’ [under Brecht] necessarily means that the state court’s harmless error determination was not merely incorrect, but objectively unreasonable,” Op. at 992. Cf. Deck, 814 F.3d at 959-60 (Bea, J., dissenting from denial of reh’g en banc). And finally, hedging its bets, the majority purports to engage in an assessment of harmless error under Chapman, but concludes that because the California Court of Appeal reviewed the alleged error under Watson rather than Chapman, its harmlessness determination was objectively unreasonable. Op. at 992. Then, having dismissed the state court’s harmlessness determination, the majority engages in a de novo review under Brecht to conclude that the supposed instructional error resulted in actual prejudice to Hall. Op. at 992-93. This circular logic fails to afford the proper deference to the theory of harmlessness that reasonably supported the state court’s denial of Hall’s federal claim.
Indeed, the overwhelming evidence presented at trial that Hall murdered Foth underscores that it would have been, entirely reasonable for the state court to reject Hall’s federal claim on the basis that the error was harmless. Lena Hixon testified in detail about the manner in which Hall and Sherrors committed the murder, and her testimony was corroborated by, and consistent with, other evidence presented at trial. The prosecution also admitted evidence that Hixon told a fellow inmate that she had held Foth down as Sherrors and Hall stabbed him, and that the three of them — Hixon, Sherrors, and Hall — had robbed Foth and killed him, leaving him naked in the bushes. The prosecution introduced evidence corroborating and supporting Hixon’s account of the murder. Foth’s body was found naked. An autopsy report revealed that Foth sustained eighty-three stab wounds. When police arrested Sherrors and Hall, they found Foth’s class ring in a pair of Hall’s pants. Sherrors and Hall kept Foth’s car for several days, claiming it belonged to Hixon’s mother. The burned and destroyed car was found near Hall and Sherrors’s apartment the day after the two men saw a news report describing the car. Someone unsuccessfully attempted to use Foth’s ATM card at 8:56 PM the night of the murder, and someone used a cell phone in Foth’s possession to call a pager owned by Hix-on’s boyfriend, Michael Washington. When Hall and Sherrors were arrested and searched, the police found Washington’s pager number in Sherrors’s pocket. Each of these pieces of evidence provides corroboration for Hixon’s testimony.
Hixon’s testimony also accounts for specific details of Foth’s murder. For example, responding officers found a number, of items at the scene, including a broken fingernail and a watch. Hixon testified that when Hall and Sherrors initially let Foth out of the trunk of the car, Sherrors had grabbed her hands, breaking two of her acrylic fingernails. She also testified that after the murder, Sherrors mentioned dropping his watch at the scene. Evidence showed that Foth’s ATM card was unsuccessfully used that night; Hixon testified that, following the murder, the trio attempted to use Foth’s ATM card at a convenience store.
Moreover, while the California Court of Appeal applied only the Watson harmless-error standard in assessing the instruction’s prejudicial effect, its sound reason *1002 ing provides further support for concluding that the denial of Hall’s federal claim was reasonable. The California Court of Appeal asked “whether the error [was] prejudicial, i.e., whether it is reasonably likely the jury would have reached a different result if the court had not given the instruction.” The court held:
We answer this question in the negative. CALJIC No. 2.15 specifically instructed the jurors that they could not infer guilt of murder from the defendants’ possession of recently stolen property absent corroborating evidence of guilt. The inference of guilt addressed in CALJIC No. 2.15 is permissive, not mandatory, and thus the jury was entitled to credit, or reject, the inference based on its evaluation of the evidence.
It further observed that the jurors were instructed that they needed to find the elements of each crime, and the special circumstances, beyond a reasonable doubt. .Most importantly, the court determined that because the jury found true the special circumstance that the defendants committed the murder during the commission of a robbery, it was clear that the jury had “accepted the substance of Hixon’s testimony regarding the defendants’ involvement in the incident,” and, “[biased on Hixon’s testimony, there is no reasonable likelihood that [the jury] would have rendered a verdict more favorable to the defendants had the court omitted this instruction.”
By contrast, the majority walks through what it deems to be the flaws in Hixon’s testimony, stating that it is “nearly impossible to believe” her account “of the time-line of events,” that she “lied about using and possessing Foth’s property,” that she “downplayed her own involvement in the crimes,” and that she “lied or changed her story regarding several other details of the night.” Op. at 993. Adding up these invented shortcomings, the majority concludes that the jury “could have disbelieved Hix-on,” and “may have been encouraged to infer that Hall committed the murder based on the mere fact that he was in possession of the ring and the Audi in the days after the murder.” Op. at 993. These speculations do not show that the theory of harmlessness that may have supported the state court’s rejection of Hall’s due process claim was unreasonable. See Ayala, 135 S.Ct. at 2198-99. Indeed, the majority’s musings overlook that the jury was presented with the flaws in Hixon’s testimony and chose to believe her not only when they convicted Sherrors and Hall the first time, but again when they convicted Sher-rors at his retrial.
The fact that Sherrors was retried without the erroneous instruction and was again convicted of first degree murder only confirms that any error in giving CALJIC No. 2.15 was harmless. At Sher-rors’s retrial, the jury again found true that he committed the crime during the commission of a robbery, and he was again sentenced to life in prison without the possibility of parole. People v. Sherrors, 2014 WL 6907990, at *1 (Cal. Ct. App. Dec. 9, 2014). We therefore need not wonder what might have happened if Hall was tried without the erroneous instruction. Sherrors’s reconviction affirms that the state court’s rejection of Hall’s due process claim was an entirely reasonable application of controlling precedent, and that any error in giving the jury CALJIC No. 2.15 in Hall’s trial did not have a “substantial and injurious effect or influence in determining the jury’s verdict.” Brecht, 507 U.S. at 637, 113 S.Ct. 1710.
V
Hall’s years-long inaction precludes him from demonstrating the type of extraordinary circumstances required for relief under Rule 60(b)(6). And, even assuming that such relief were warranted, Hall has not shown that the permissive inference creat *1003 ed by CALJIC No. 2.15 violated his due process rights. Finally, even accepting that instructing the jury -with CALJIC No. 2.15 amounted to a constitutional error, the instruction did not actually prejudice Hall. These serious errors will result in California having to retry a defendant who is undoubtedly guilty of the murder he committed.
It bears repeating that “[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court’s ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.” Harrington, 562 U.S. at 103, 131 S.Ct. 770. That standard is not met here. The majority’s decision to the contrary disregards not only binding precedents, but the Supreme Court’s numerous admonitions to this circuit that it adhere to AEDPA’s stringent standards.
I therefore respectfully dissent.

. The majority contends that Harrington does not apply because the Court of Appeal’s analysis under the Watson standard indicates that it determined that there was no constitutional *998 error. The majority further contends that the court's citation to People v. Barker, 91 Cal. App. 4th 1166, 111 Cal.Rptr.2d 403 (2001), provides sufficient "insight into the state court's reasoning for rejecting Hall's constitutional claim.” Op. at 991 n.10. But the citation to Barker tells us nothing about the Court' of Appeal’s reasons for denying the federal claim, since Barker finds that giving CALJIC No. 2.15 implicates a defendant's federal due process rights, 91 Cal. App. 4th at 1174-76, 111 Cal.Rptr.2d 403 (assessing error under Chapman standard), while Prieto implicitly rejects that conclusion, 30 Cal. 4th at 249, 133 Cal.Rptr.2d 18, 66 P.3d 1123. Accordingly, we cannot treat this citation as a "reasoned” decision on Hall's due process claim. Cf. Curiel v. Miller, 830 F.3d 864, 870 (9th Cir. 2016).
Moreover, the majority’s analysis contradicts the clear holding of Williams, 133 S.Ct. at 1096. In Williams, the Supreme Court instructed that where, as here, a state court considers a petitioner's federal claim but does not "expressly acknowledge” it, the reviewing federal court must assess the state court’s decision under Harrington. Williams, 133 S.Ct. at 1093, 1096. This is true even if the state court cites to the controlling federal standard, or cites cases which reference federal law. Id. at 1093, 1098-99.

. Prieto’s citation to Barker is revealing, but not for the reasons given by the majority. See Op. at 990-91. Indeed, the Prieto court appears to have considered, and rejected, Barker's conclusion that instructing the jury with CALJIC No. 2.15 on a murder charge implicates a defendant's due process rights. 30 Cal. 4th at 248-49, 133 Cal.Rptr.2d 18, 66 P.3d 1123. Prieto also rejected the argument that CALJIC No. 2.15 violated due process by creating a mandatory inference, as it found that "nothing in the instruction absolved the prosecution of its burden of establishing guilt beyond a reasonable doubt.” 30 Cal. 4th at 248, 133 Cal.Rptr.2d 18, 66 P.3d 1123; see generally Sandstrom v. Montana, 442 U.S. 510, 521-24, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The court looked to the jury instruction requiring that the prosecution prove the elements of the offense beyond a reasonable doubt, and stated that the trial court gave "other instructions properly instructing] the jury on its duty to weigh the evidence, what evidence it may consider, how to weigh that evidence, and the burden of proof” such that "there is 'no possibility' that [the instruction] reduced the prosecution's burden of proof in this case.” 30 Cal. 4th at 248, 133 Cal.Rptr.2d 18, 66 P.3d 1123. This discussion further evidences that the Prieto court considered, and rejected, the proposition that giving CALJIC No. 2.15 is an error of constitutional significance.

. Again, although the California Court of Appeal assessed harmlessness, it did so under the Watson standard, and addressed only whether the error was one of state law. The California Supreme Court issued a summary denial of Hall's federal claim. As explained above, when a state court’s determination of a federal claim is unaccompanied by a reasoned decision, we “must determine what arguments or theories ... could have supported ... the state court's decision .... ” Harrington, 562 U.S. at 102, 131 S.Ct. 770 (emphasis added); Williams, 133 S.Ct. at 1096.