(Slip Opinion)     OCTOBER TERM, 2006     1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## FRY *v.* PLILER, WARDEN

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 06–5247.   Argued March 20, 2007—Decided June 11, 2007

The trial judge presiding over petitioner's criminal trial excluded the testimony of defense-witness Pamela Maples. After his conviction, petitioner argued on appeal, *inter alia,* that the exclusion of Maples' testimony violated *Chambers* v. *Mississippi*, 410 U. S. 284, which held that a combination of erroneous evidentiary rulings rose to the level of a due-process violation. The California Court of Appeal did not explicitly address that argument in affirming, but stated, without specifying which harmless-error standard it was applying, that "no possible prejudice" could have resulted in light of the cumulative nature of Maples' testimony. The State Supreme Court denied discretionary review. Petitioner then filed a federal habeas petition raising the due-process and other claims. The Magistrate Judge found the state appellate court's failure to recognize *Chambers* error an unreasonable application of clearly established law as set forth by this Court, and disagreed with the finding of "no possible prejudice," but concluded there was an insufficient showing that the improper exclusion of Maples' testimony had a "substantial and injurious effect" on the jury's verdict under *Brecht* v. *Abrahamson*, 507 U. S. 619, 631. Agreeing, the District Court denied relief, and the Ninth Circuit affirmed.

*Held:* In 28 U. S. C. §2254 proceedings, a federal court must assess the prejudicial impact of constitutional error in a state-court criminal trial under *Brecht*'s "substantial and injurious effect" standard, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the "harmless beyond a reasonable doubt" standard set forth in *Chapman* v. *California,* 386 U. S. 18, 24. Pp. 3–8.

Syllabus

(a) That *Brecht* applies in §2254 cases even if the state appellate court has not found, as did the state appellate court in *Brecht,* that the error was harmless under *Chapman,* is indicated by this Court's *Brecht* opinion, which did not turn on whether the state court itself conducted *Chapman* review, but instead cited concerns about finality, comity, and federalism as the primary reasons for adopting a less onerous standard on collateral review. 507 U. S., at 637. Since each of these concerns applies with equal force whether or not the state court reaches the *Chapman* question, it would be illogical to make the standard of review turn upon that contingency. *Brecht, supra,* at 636, distinguished. Petitioner presents a false analogy in arguing that, if *Brecht* applies whether or not the state appellate court conducted *Chapman* review, then *Brecht* would apply even if a State eliminated appellate review altogether. The Court also rejects petitioner's contention that, even if *Brecht* adopted a categorical rule, post-*Brecht* developments—the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), as interpreted in *Mitchell* v. *Esparza,* 540 U. S. 12—require a different review standard. That result is not suggested by *Esparza,* which had no reason to decide the point, nor by AEDPA, which sets forth a precondition, not an entitlement, to the grant of habeas relief. Pp. 3–7.

(b) Petitioner's argument that the judgment below must still be reversed because excluding Maples' testimony substantially and injuriously affected the jury's verdict is rejected as not fairly encompassed by the question presented. Pp. 7–8.

Affirmed.

SCALIA, J., delivered the opinion for a unanimous Court with respect to all but footnote 1 and Part II–B. ROBERTS, C. J., and KENNEDY, THOMAS, and ALITO, JJ., joined that opinion in full; STEVENS, SOUTER, and GINSBURG, JJ., joined it as to all but Part II–B; and BREYER, J., joined as to all but footnote 1 and Part II–B. STEVENS, J., filed an opinion concurring in part and dissenting in part, in which SOUTER and GINSBURG, JJ., joined, and in which BREYER, J., joined in part. BREYER, J., filed an opinion concurring in part and dissenting in part.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 06–5247

JOHN FRANCIS FRY, PETITIONER *v.* CHERYL K. PLILER, WARDEN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[June 11, 2007]

JUSTICE SCALIA delivered the opinion of the Court.

We decide whether a federal habeas court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in *Brecht* v. *Abrahamson*, 507 U. S. 619 (1993), when the state appellate court failed to recognize the error and did not review it for harmlessness under the "harmless beyond a reasonable doubt" standard set forth in *Chapman* v. *California*, 386 U. S. 18 (1967).

I

After two mistrials on account of hung juries, a third jury convicted petitioner of the 1992 murders of James and Cynthia Bell. At trial, petitioner sought to attribute the murders to one or more other persons. To that end, he offered testimony of several witnesses who linked one Anthony Hurtz to the killings. But the trial court excluded the testimony of one additional witness, Pamela Maples, who was prepared to testify that she had heard Hurtz discussing homicides bearing some resemblance to the murder of the Bells. In the trial court's view, the defense had provided insufficient evidence to link the

incidents described by Hurtz to the murders for which petitioner was charged.

Following his conviction, petitioner appealed to the California Court of Appeal, arguing (among other things) that the trial court's exclusion of Maples' testimony deprived him of a fair opportunity to defend himself, in violation of *Chambers* v. *Mississippi*, 410 U. S. 284 (1973) (holding that a combination of erroneous evidentiary rulings rose to the level of a due process violation). Without explicitly addressing petitioner's *Chambers* argument, the state appellate court held that the trial court had not abused its discretion in excluding Maples' testimony under California's evidentiary rules, adding that "no possible prejudice" could have resulted in light of the "merely cumulative" nature of the testimony. *People* v. *Fry,* No. A072396 (Ct. App. Cal., 1st App. Dist., Mar. 30, 2000), App. 97, n. 17. The court did not specify which harmless-error standard it was applying in concluding that petitioner suffered "no possible prejudice." The Supreme Court of California denied discretionary review, and petitioner did not then seek a writ of certiorari from this Court.

Petitioner next filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of California, raising the aforementioned due-process claim (among others). The case was initially assigned to a Magistrate Judge, who ultimately recommended denying relief. He found the state appellate court's failure to recognize error under *Chambers* to be "an unreasonable application of clearly established law as set forth by the Supreme Court," App. 180, and disagreed with the state appellate court's finding of "no possible prejudice." But he nevertheless concluded that "there ha[d] been an insufficient showing that the improper exclusion of the testimony of Ms. Maples had a substantial and injurious effect on the jury's verdict" under the standard set forth in *Brecht*.

App. 181–182. The District Court adopted the Magistrate Judge's findings and recommendations in full, and a divided panel of the United States Court of Appeals for the Ninth Circuit affirmed. We granted certiorari. 549 U. S. \_\_\_ (2006).

## II

## A

In *Chapman, supra*, a case that reached this Court *on direct review* of a state-court criminal judgment, we held that a federal constitutional error can be considered harmless only if a court is "able to declare a belief that it was harmless beyond a reasonable doubt." *Id.*, at 24. In *Brecht, supra,* we considered whether the *Chapman* standard of review applies *on collateral review* of a state-court criminal judgment under 28 U. S. C. §2254. Citing concerns about finality, comity, and federalism, we rejected the *Chapman* standard in favor of the more forgiving standard of review applied to nonconstitutional errors on direct appeal from federal convictions. See *Kotteakos* v. *United States*, 328 U. S. 750 (1946). Under that standard, an error is harmless unless it "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht, supra*, at 631 (quoting *Kotteakos, supra,* at 776). The question in this case is whether a federal court must assess the prejudicial impact of the unconstitutional exclusion of evidence during a state-court criminal trial under *Brecht* even if the state appellate court has not found, as the state appellate court in *Brecht* had found, that the error was harmless beyond a reasonable doubt under *Chapman*.[1]

_____

[1] As this case comes to the Court, we assume (without deciding) that the state appellate court's decision affirming the exclusion of Maples' testimony was an unreasonable application of *Chambers* v. *Mississippi*, 410 U. S. 284, 302 (1973). We also assume that the state appellate court did not determine the harmlessness of the error under the *Chap-*

We begin with the Court's opinion in *Brecht*. The primary reasons it gave for adopting a less onerous standard on collateral review of state-court criminal judgments did not turn on whether the state court itself conducted *Chapman* review. The opinion explained that application of *Chapman* would "undermin[e] the States' interest in finality," 507 U. S., at 637; would "infring[e] upon [the States'] sovereignty over criminal matters," *ibid.;* would undercut the historic limitation of habeas relief to those "'grievously wronged,'" *ibid.;* and would "impos[e] significant 'societal costs,'" *ibid.* (quoting *United States* v. *Mechanik*, 475 U. S. 66, 72 (1986)). Since each of these concerns applies with equal force whether or not the state court reaches the *Chapman* question, it would be illogical to make the standard of review turn upon that contingency.

The opinion in *Brecht* clearly assumed that the *Kotteakos* standard would apply in virtually all §2254 cases. It suggested an exception only for the "unusual case" in which "a deliberate and especially egregious error of the trial type, or one that is combined with a pattern of prosecutorial misconduct . . . infect[s] the integrity of the proceeding." 507 U. S., at 638, n. 9. This, of course, has nothing to do with whether the state court conducted harmless-error review. The concurring and dissenting opinions shared the assumption that *Kotteakos* would almost always be the standard on collateral review. The former stated in categorical terms that the "*Kotteakos* standard" "will now apply on collateral review" of state convictions, 507 U. S., at 643 (STEVENS, J., concurring). Justice White's dissent complained that under the Court's opinion *Kotteakos* would apply even where (as in this case) the state court found that "no violation had occurred," 507

_____

*man* standard, notwithstanding its ambiguous conclusion that the exclusion of Maples' testimony resulted in "no possible prejudice."

U. S., at 644; and Justice O'Connor's dissent stated that *Chapman* would "no longer appl[y] to *any* trial error asserted on habeas," 507 U. S., at 651. Later cases also assumed that *Brecht*'s applicability does not turn on whether the state appellate court recognized the constitutional error and reached the *Chapman* question. See *Penry* v. *Johnson*, 532 U. S. 782, 795 (2001); *Calderon* v. *Coleman*, 525 U. S. 141, 145 (1998) *(per curiam)*.

Petitioner's contrary position misreads (or at least exaggerates the significance of) a lone passage from our *Brecht* opinion. In that passage, the Court explained:

> "State courts are fully qualified to identify constitutional error and evaluate its prejudicial effect on the trial process under *Chapman*, and state courts often occupy a superior vantage point from which to evaluate the effect of trial error. For these reasons, it scarcely seems logical to require federal habeas courts to engage in the identical approach to harmless-error review that *Chapman* requires state courts to engage in on direct review." 507 U. S., at 636 (citation omitted).

But the quoted passage does little to advance petitioner's position. To say (a) that since state courts are *required* to evaluate constitutional error under *Chapman* it makes no sense to establish *Chapman* as the standard for federal habeas review is not at all to say (b) that whenever a state court fails in its responsibility to apply *Chapman* the federal habeas standard must change. It would be foolish to equate the two, in view of the other weighty reasons given in *Brecht* for applying a less onerous standard on collateral review—reasons having nothing to do with whether the state court actually applied *Chapman*.

Petitioner argues that, if *Brecht* applies whether or not the state appellate court conducted *Chapman* review, then *Brecht* would apply even if a State *eliminated appellate*

*review altogether*.  That is not necessarily so.  The federal
habeas review rule applied to the class of case in which
state appellate review is available does not have to be the
same rule applied to the class of case where it is not.  We
have no occasion to resolve that hypothetical (and highly
unrealistic) question now.  In the case before us petitioner
*did* obtain appellate review of his constitutional claim; the
state court simply found the underlying claim weak and
therefore did not measure its prejudicial impact under
*Chapman*.  The attempted analogy—between (1) eliminat-
ing appellate review altogether and (2) providing appellate
review but rejecting a constitutional claim without assess-
ing its prejudicial impact under *Chapman*—is a false one.

   Petitioner contends that, even if *Brecht* adopted a cate-
gorical rule, post-*Brecht* developments require a different
standard of review.  Three years after we decided *Brecht*,
Congress passed, and the President signed, the Antiterror-
ism and Effective Death Penalty Act of 1996 (AEDPA),
under which a habeas petition may not be granted unless
the state court's adjudication "resulted in a decision that
was contrary to, or involved an unreasonable application
of, clearly established Federal law, as determined by the
Supreme Court of the United States . . . ."  28 U. S. C.
§2254(d)(1).  In *Mitchell* v. *Esparza*, 540 U. S. 12 (2003)
*(per curiam),* we held that, when a state court determines
that a constitutional violation is harmless, a federal court
may not award habeas relief under §2254 unless *the harm-*
*lessness determination itself* was unreasonable.  Petitioner
contends that §2254(d)(1), as interpreted in *Esparza*,
eliminates the requirement that a petitioner also satisfy
*Brecht*'s standard.  We think not.  That conclusion is not
suggested by *Esparza*, which had no reason to decide the
point.  Nor is it suggested by the text of AEDPA, which
sets forth a precondition to the grant of habeas relief ("a
writ of habeas corpus . . . shall not be granted" unless the
conditions of §2254(d) are met), not an entitlement to it.

Given our frequent recognition that AEDPA limited rather than expanded the availability of habeas relief, see, *e.g.*, *Williams* v. *Taylor*, 529 U. S. 362, 412 (2000), it is implausible that, without saying so, AEDPA replaced the *Brecht* standard of "'actual prejudice,'" 507 U. S., at 637 (quoting *United States* v. *Lane*, 474 U. S. 438, 449 (1986)), with the more liberal AEDPA/*Chapman* standard which requires only that the state court's harmless-beyond-a-reasonable-doubt determination be unreasonable. That said, it certainly makes no sense to require formal application of *both* tests (AEDPA/*Chapman* and *Brecht*) when the latter obviously subsumes the former. Accordingly, the Ninth Circuit was correct to apply the *Brecht* standard of review in assessing the prejudicial impact of federal constitutional error in a state-court criminal trial.[2]

B

Petitioner argues that, even if *Brecht* provides the standard of review, we must still reverse the judgment below because the exclusion of Maples' testimony substantially and injuriously affected the jury's verdict in this case. That argument, however, is not fairly encompassed within the question presented. We granted certiorari to decide a question that has divided the Courts of Appeals—whether *Brecht* or *Chapman* provides the appropriate standard of review when constitutional error in a state-court trial is first recognized by a federal court. Compare, *e.g.*, *Bains* v. *Cambra*, 204 F. 3d 964, 976–977 (CA9 2000), with *Orndorff* v. *Lockhart*, 998 F. 2d 1426, 1429–1430 (CA8 1993).

—————

[2] We do not agree with petitioner's *amicus* that *Brecht*'s concerns regarding the finality of state-court criminal judgments and the difficulty of retrying a defendant years after the crime "have been largely alleviated by [AEDPA]," which "sets strict time limitations on habeas petitions and limits second or successive petitions as well." Brief for Innocence Network 7. Even cases governed by AEDPA can span a decade, as the nearly 12-year gap between petitioner's conviction and the issuance of this decision illustrates.

It is true that the second sentence of the question pre-
sented asks: "Does it matter which harmless error stan-
dard is employed?" Pet. for Cert. I. But to ask whether
*Brecht* makes any real difference is not to ask whether the
Ninth Circuit misapplied *Brecht* in this particular case.
Petitioner seems to have understood this. Only in a brief
footnote of his petition did he hint that the Ninth Circuit
erred in its application of the *Brecht* standard. Pet. for
Cert. 23, n. 19.[3] Indeed, if application of the *Brecht* stan-
dard to the facts of this case were encompassed within the
question presented, so too would be the question of
whether there was constitutional error in the first place.
After all, it would not "matter which harmless error stan-
dard is employed" if there were no underlying constitu-
tional error. Unlike the dissenting JUSTICES, some of
whom would reverse the decision below on the ground that
the error was harmful under *Brecht*, and one of whom
would vacate the decision below on the ground that it is
unclear whether there was constitutional error in the first
instance, we read the question presented to avoid these
tangential and factbound questions, and limit our review
to the question of whether *Chapman* or *Brecht* provides
the governing standard.

---

[3] The question presented included one additional issue: "[I]f the
*Brecht* standard applies, does the petitioner or the State bear the
burden of persuasion on the question of prejudice?" Pet. for Cert. I. We
have previously held that, when a court is "in virtual equipoise as to
the harmlessness of the error" under the *Brecht* standard, the court
should "treat the error . . . as if it affected the verdict . . . ." *O'Neal* v.
*McAninch*, 513 U. S. 432, 435 (1995). The majority opinion below did
not refer to *O'Neal,* presumably because the majority harbored no grave
doubt as to the harmlessness of the error. Neither did the dissenting
judge refer to *O'Neal*, presumably because she did not think the major-
ity harbored grave doubt as to the harmlessness of the error. Moreover,
the State has conceded throughout this §2254 proceeding that it bears
the burden of persuasion. Thus, there is no basis on which to conclude
that the court below ignored *O'Neal*.

*    *    *

We hold that in §2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in *Brecht*, 507 U. S. 619, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the "harmless beyond a reasonable doubt" standard set forth in *Chapman*, 386 U. S. 18. Since the Ninth Circuit correctly applied the *Brecht* standard rather than the *Chapman* standard, we affirm the judgment below.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

─────────────

No. 06–5247

─────────────

## JOHN FRANCIS FRY, PETITIONER *v.* CHERYL K. PLILER, WARDEN

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[June 11, 2007]

JUSTICE STEVENS, with whom JUSTICE SOUTER and JUSTICE GINSBURG join, and with whom JUSTICE BREYER joins in part, concurring in part and dissenting in part.

While I join all of the Court's opinion except Part II–B, I am persuaded that we should also answer the question whether the constitutional error was harmless under the standard announced in *Brecht* v. *Abrahamson*, 507 U. S. 619 (1993). The parties and the Solicitor General as *amicus curiae* fully briefed and argued the question, presumably because it appears to fit within the awkwardly drafted question that we agreed to review.[1] Moreover, our answer to the question whether the error was harmless would emphasize the important point that the *Brecht* standard, as more fully explained in our opinion in *Kotteakos* v. *United States,* 328 U. S. 750 (1946), imposes a significant burden of persuasion on the State.

Both the history of this litigation and the nature of the constitutional error involved provide powerful support for the conclusion that if the jurors had heard the testimony

─────────────

[1] In *Brecht* itself the application of the standard of *Kotteakos* v. *United States*, 328 U. S. 750 (1946), to the facts of the case was not even arguably encompassed within the question presented. We nonetheless found it appropriate to rule on whether the error was harmless under that standard. See *Brecht*, 507 U. S., at 638 ("All that remains to be decided is whether petitioner is entitled to relief").

of Pamela Maples, they would at least have had a reasonable doubt concerning petitioner's guilt.  Petitioner was not found guilty until after he had been tried three times. The first trial ended in a mistrial with the jury deadlocked 6 to 6.  App. 121.  The second trial also resulted in a mistrial due to a deadlocked jury, this time 7 to 5 in favor of conviction.  *Ibid.*  In the third trial, after the jurors had been deliberating for 11 days, the foreperson advised the judge that they were split 7 to 5 and "'hopelessly deadlocked.'"  *Id.,* at 74–75.  When the judge instructed the jury to continue its deliberations, the foreperson requested clarification on the definition of "reasonable doubt."  *Id.*, at 75.  The jury deliberated for an additional 23 days after that exchange—a total of *five weeks*—before finally returning a guilty verdict.[2]

It is not surprising that some jurors harbored a reasonable doubt as to petitioner's guilt weeks into their deliberations.  The only person to offer eyewitness testimony, a disinterested truckdriver, described the killer as a man who was 5'7" to 5'8" tall, weighed about 140 pounds, and had a full head of hair.  Tr. 4574 (Apr. 26, 1995).  Petitioner is 6'2" tall, weighed 300 pounds at the time of the murder, and is bald.  Record, Doc. No. 13, Exh. L (arrest report); *Ibid.*, Exh. M (petitioner's driver's license).  Seven different witnesses linked the killings to a man named Anthony Hurtz, some testifying that Hurtz had admitted to them that he was in fact the killer.  App. 60–64, 179.

---

[2] According to data compiled by the National Center for State Courts, the average length of jury deliberations for a *capital* murder trial in California is 12 *hours*.  See Judge and Attorney Survey (California), State of the States—Survey of Jury Improvement Efforts (2007), online at http://www.ncsconline.org/D_research/cjs/xls/SOSJAData/CA_JA_State.xls (as visited June 8, 2007, and available in Clerk of Court's case file).  Three days before the jury reached a verdict in this noncapital case, the trial judge speculated that it was perhaps the longest deliberation in the history of Solano County.  Tr. 5315 (June 5, 1995).

Each of those witnesses, unlike the truckdriver, was impeached by evidence of bias, either against Hurtz or for petitioner. *Id.*, at 61–64, 73, 179–180.

However, Pamela Maples, a cousin of Hurtz's who was in all other respects a disinterested witness, did not testify at either of petitioner's first two trials. During the third trial, she testified out of the presence of the jury that she had overheard statements by Hurtz that he had committed a double murder strikingly similar to that witnessed by the truckdriver. As the Magistrate Judge found, the exclusion of Maples' testimony for lack of foundation was clear constitutional error under *Chambers* v. *Mississippi*, 410 U. S. 284 (1973), and the State does not argue otherwise.[3] Cf. *Skipper* v. *South Carolina*, 476 U. S. 1, 8 (1986) ("The testimony of more disinterested witnesses . . . would quite naturally be given much greater weight by the jury").

*Chambers* error is by nature prejudicial. We have said that *Chambers* "does not stand for the proposition that the defendant is denied a fair opportunity to defend himself whenever a state or federal rule excludes favorable evidence." *United States* v. *Scheffer*, 523 U. S. 303, 316 (1998). Rather, due process considerations hold sway over state evidentiary rules only when the exclusion of evidence "undermine[s] fundamental elements of the defendant's defense." *Id.*, at 315. Hence, as a matter of law and logical inference, it is well-nigh impossible for a reviewing court to conclude that such error "did not influence the jury, or had but very slight effect" on its verdict. *Kotteakos*, 328 U. S., at 764; see also *O'Neal* v. *McAninch*, 513 U. S. 432, 445 (1995) ("[W]hen a habeas court is in grave

---

[3] As the Magistrate Judge remarked, "[j]ust how many double execution style homicides involving a female driver shot in the head and a male passenger also shot in a parked car could there be in a community proximate to the victims' murder herein?" App. 179.

doubt as to the harmlessness of an error that affects substantial rights, it should grant relief").

It is difficult to imagine a less appropriate case for an exception to that commonsense proposition. We found in *Parker* v. *Gladden*, 385 U. S. 363 (1966) *(per curiam)*, that 26 hours of juror deliberations in a murder trial "indicat[ed] a difference among them as to the guilt of petitioner." *Id.*, at 365. Here, the jury was deprived of significant evidence of third-party guilt, and still we measure the length of deliberations by weeks, not hours. In light of the jurors' evident uncertainty, the prospect of rebutting the near-conclusive presumption that the *Chambers* error did substantial harm vanishes completely.[4]

We have not been shy in emphasizing that federal habeas courts do not lightly find constitutional error. See *Carey* v. *Musladin*, 549 U. S. ___ (2006). It follows that when they do find an error, they may not lightly discount its significance. Rather, a harmlessness finding requires

—————

[4] See *United States* v. *Fields*, 483 F. 3d 313, 379 (CA5 2007) (Benavides, J., dissenting from Part II–A–I and dissenting, in part, from the judgment) ("Courts often have been unwilling to find error harmless where the record, as in this case, affirmatively shows that the jurors struggled with their verdict"); *Kennedy* v. *Lockyer*, 379 F. 3d 1041, 1056, n. 18 (CA9 2004) ("From the fact that the first trial ended in a mistrial, as well as the fact that the jury deliberated for a considerable amount of time in the second trial, we infer that the question as to [the defendant's] guilt or innocence was a close one in both trials"); *Powell* v. *Collins*, 332 F. 3d 376, 401 (CA6 2003) (finding prejudicial error in a habeas case in part because the jury at one point told the court that it was "'at a stalemate'"); *United States* v. *Varoudakis*, 233 F. 3d 113, 127 (CA1 2000) (noting, in weighing harmlessness, that "the jury's 'impasse' note reveals uncertainty about [the defendant's] guilt"); *United States* v. *Ottersburg*, 76 F. 3d 137, 140 (CA7 1996) ("The length of the jury's deliberations makes clear that this case was not an easy one"); *Medina* v. *Barnes*, 71 F. 3d 363, 369 (CA10 1995) (basing prejudice determination in a habeas case in part on the fact that "at one point during their deliberations, the jurors indicated that they might be unable to reach a unanimous verdict").

"fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos*, 328 U. S., at 765. Given "all that happened" in this case, and given the nature of the error, I cannot agree with the Ninth Circuit's conclusion that the erroneous exclusion of Maples' testimony was harmless under that standard.

Accordingly, I would reverse the judgment of the Court of Appeals.

# SUPREME COURT OF THE UNITED STATES

_____

No. 06–5247

_____

JOHN FRANCIS FRY, PETITIONER *v.* CHERYL
K. PLILER, WARDEN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[June 11, 2007]

JUSTICE BREYER, concurring in part and dissenting in
part.

I agree with the Court that *Brecht* v. *Abrahamson*, 507
U. S. 619 (1993), sets forth the proper standard of review.
Cf. *id.*, at 643 (STEVENS, J., concurring).  At the same
time, I agree with JUSTICE STEVENS that we should con-
sider the application of the standard, that the error was
not harmless, and that "*Chambers* error is by nature
prejudicial."  *Ante*, at 3 (opinion concurring in part and
dissenting in part) (citing *Chambers* v. *Mississippi*, 410
U. S. 284 (1973)).  Cf. *Kyles* v. *Whitley*, 514 U. S. 419,
435 (1995) (similar statement as to errors under
*Brady* v. *Maryland*, 373 U. S. 83 (1963)).  Nonetheless, I
would remand this case rather than reversing the Court of
Appeals.

My reason arises out of the fact that here, for purposes
of deciding whether *Chambers* error exists, the question of
harm is inextricably tied to other aspects of the trial
court's determination.  The underlying evidentiary judg-
ment at issue involved a weighing of the probative value of
proffered evidence against, *e.g.*, its cumulative nature, its
tendency to confuse or to prejudice the jury, or the likeli-
hood that it will simply waste the jury's time. See App.
96–97; Cal. Evid. Code Ann. §352 (West 1995); cf. Fed.
Rule Evid. 403.  In this context, to find a *Chambers* error a

court must take account *both* of the way in which (and extent to which) the trial court misweighed the relevant admissibility factors *and* of the extent to which doing so harmed the defendant. Moreover, to find this kind of error harmless, as the Court of Appeals found it, should preclude the possibility of a *Chambers* error; but to find this kind of error harmful does not guarantee the contrary. A garden-variety nonharmless misapplication of evidentiary principles normally will not rise to the level of a constitutional, *Chambers*, mistake. Cf., *e.g.*, *United States* v. *Scheffer*, 523 U. S. 303, 308 (1998).

All this, it seems to me, requires reconsideration by the Court of Appeals of its *Chambers* determination. I would not consider the question whether that exclusion of evidence amounted to *Chambers* error because that question is not before us, see *ante*, at 3, n. 1 (opinion of the Court). But the logically inseparable question of harm is before us; and that, I believe, is sufficient.

I would remand the case to the Ninth Circuit so that, taking account of the points JUSTICE STEVENS raises, *ante*, at 1–4, it can reconsider whether there was an error of admissibility sufficiently serious to violate *Chambers*. I therefore join the Court's opinion except as to footnote 1 and Part II–B, and I join JUSTICE STEVENS' opinion in part.