FILED

MAY 06 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| PETER ELVIK,<br><br>　　　　　Petitioner - Appellee,<br><br>　v.<br><br>RENEE BAKER and ATTORNEY GENERAL OF THE STATE OF NEVADA,<br><br>　　　　　Respondents - Appellants. | No. 13-17530<br><br>D.C. No. 3:04-cv-00471-GMN-WGC<br><br><br>MEMORANDUM[*] |
| PETER ELVIK,<br><br>　　　　　Petitioner - Appellant,<br><br>　v.<br><br>RENEE BAKER and ATTORNEY GENERAL OF THE STATE OF NEVADA,<br><br>　　　　　Respondents - Appellees. | No. 14-15126<br><br>D.C. No. 3:04-cv-00471-GMN-WGC |

Appeal from the United States District Court
for the District of Nevada

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Gloria M. Navarro, Chief District Judge, Presiding

Argued and Submitted April 14, 2015
San Francisco, California

Before: SCHROEDER and N.R. SMITH, Circuit Judges and KRONSTADT,[**] District Judge.

The Nevada Attorney General appeals the district court's order conditionally granting Peter Elvik's 28 U.S.C. § 2254 habeas corpus petition, challenging his conviction of open murder and robbery with the use of a deadly weapon.

On appeal, the government does not argue that the district court erred in determining that the Nevada Supreme Court was unreasonable in holding that the trial court not was required to give an instruction based on Nev. Rev. Stat. § 194.010(2). Instead, the government argues that (1) the district court was obligated to develop alternative theories to support the Nevada Supreme Court's decision, and (2) the district court erred by concluding that the error was not harmless.

1. The district court was not obligated to develop alternative theories to support the Nevada Supreme Court's decision. The Nevada Supreme Court did not provide a summary decision without reasoning, as in *Harrington v. Richter*, 562

----

[**] The Honorable John A. Kronstadt, District Judge for the U.S. District Court for the Central District of California, sitting by designation.

U.S. 86, 96 (2011), or a decision that failed to address one of the claims, as in *Johnson v. Williams,* 133 S. Ct. 1088, 1096-97 (2013). Instead, the Nevada Supreme Court provided a reasoned decision that addressed all of the key issues in the appeal. Therefore, the district court did not err by analyzing the rationale of the Nevada Supreme Court as presented in its reasoned opinion.

2. The trial court's failure to provide a jury instruction regarding Nev. Rev. Stat. § 194.010 was not harmless. "Habeas relief is warranted only if the error had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Merolillo v. Yates*, 663 F.3d 444, 454 (9th Cir. 2011) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). The Supreme Court has explained:

> [I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough [evidence] to support the result, apart from . . . the error. It is rather, . . . whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Kotteakos v. United States*, 328 U.S. 750, 765 (1946). In other words, we do not undertake a sufficiency of the evidence inquiry in making this decision. Rather, we must determine whether the excluded instruction may have had a substantial influence on the jury's decision. Additionally, "[w]here the record is so evenly

3

balanced that a judge feels himself in virtual equipoise as to the harmlessness of the error and has grave doubt about whether an error affected a jury [substantially and injuriously], the judge must treat the error as if it did so." *Merolillo*, 663 F.3d at 454 (internal quotation marks omitted) (alteration in original).

Juries are presumed to follow the instructions given to them by the trial court. *Vitello v. United States*, 425 F.2d 416, 422 (9th Cir. 1970). Important for the jury to decide here was whether Elvik knew right from wrong. Nev. Rev. Stat. § 194.010(2) creates a presumption that children between the ages of eight and fourteen are unable to distinguish right from wrong. Elvik proposed an instruction based on Nev. Rev. Stat. § 194.010(2), which stated:

> All persons are liable to punishment except those belonging to the following class as it applies to this case:
> Children between the ages of eight years and fourteen years, in the absence of clear proof that at the time of committing the act charged against them they knew its wrongfulness. Peter Elvik was fourteen years old on August 31, 1995.

The trial court rejected the instruction. Nevada courts have described the language of Nev. Rev. Stat. § 194.010(2) as creating a presumption that the defendant lacked capacity to commit the crime. *See Winnerford Frank H. v. State*, 915 P.2d 291, 293 (Nev. 1996). Thus, had the trial court given the instruction, the jury would have been required to presume that Elvik was not liable for punishment of his

4

actions, unless the government proved by clear evidence that Elvik knew (at the time he committed the crimes) that his conduct was wrong. The trial court's error completely relieved the government of that burden.

We cannot say, with fair assurance, that the failure to tell the jury about this presumption did not sway the jury's verdict. Overcoming the presumption in this case would have been daunting; the jury could not convict Elvik unless it found by clear proof that Elvik knew that what he was doing was wrong when he committed the crime. Instead, because the jury wasn't told, the jury was never even aware that acquittal under Nev. Rev. Stat. § 194.010(2) was an option.

The government argues that, even without the instruction, the record contains strong evidence indicating that Elvik understood the wrongfulness of his actions. Of course, the government (and the dissent) emphasize the evidence of Elvik's understanding. However, this is not a sufficiency of the evidence analysis. Instead of weighing the evidence, we must ask whether the error was substantial and injurious. This record includes other evidence that could have led a jury to conclude that Elvik did not understand that what he did was wrong. The jury was deprived of the opportunity to follow the judge's instruction, outlining the presumption that Elvik did not understand right from wrong. We cannot suggest that the error was not substantial and injurious. And even if we were conflicted

5

concerning the error's harmlessness, we are to treat the error as harmful. Therefore, we agree with the district court in concluding that the failure to provide a jury instruction on Nev. Rev. Stat. § 194.010 was not harmless.

Because we affirm the district court's conditional grant of Elvik's habeas petition, we do not reach the issues raised in Elvik's cross appeal.

**AFFIRMED**.

Elvik v. Baker, Nos. 13-17530 & 14-15126

KRONSTADT, District Judge, concurring in part and dissenting in part:

I concur with the conclusion of the majority that the district court "was not obligated to develop alternative theories to support the Nevada Supreme Court's decision." I also agree that defendant's knowledge of wrongfulness is a prerequisite to punishment under Nev. Rev. Stat. § 194.010(2). I respectfully dissent, however, from the conclusion that "[t]he trial court's failure to provide a jury instruction regarding Nev. Rev. Stat. § 194.010 was not harmless."

As the majority observes, "[t]he government argues that, even without the instruction, the record contains strong evidence indicating that Elvik understood the wrongfulness of his actions." It goes on, however, to state that "[t]his record includes other evidence that could have led a jury to conclude that Elvik did not understand that what he did was wrong." It is with this latter finding that I respectfully disagree.

In my view, the record evidence is not "so evenly balanced" that a judge could feel "in virtual equipoise as to the harmlessness of the error" or have "grave doubt about whether an error affected a jury [substantially and injuriously] . . . ." *Merolillo*, 663 F.3d at 454 (internal quotation marks omitted) (alteration in original) (citing *O'Neal v. McAninch,* 513 U.S. 432, 435, 437-38 (1995)). Instead,

a consideration of the record evidence as a whole supports the conclusion that the error did not have a substantial and injurious effect or influence on the verdict.

The following record evidence shows that Elvik had a level of sophistication and understanding that would cause any reasonable jury to conclude that, when he shot and killed the victim, Elvik knew the difference between right and wrong:

1. After the shooting, Elvik took the victim's briefcase and handgun. The briefcase contained the victim's money clip and the keys to his vehicle. Elvik then drove the victim's vehicle from Nevada to California.

2. After arriving in California, Elvik contacted his 13-year-old girlfriend, picked her up in the victim's vehicle, and checked into a motel with her for the night. He took the victim's handgun and money clip into the motel room.

3. The day after the shooting, at approximately 3:00 a.m., California law enforcement personnel, who had become aware of the events in Nevada, identified the vehicle outside the motel as the one that belonged to the victim of the shooting. They contacted the person working at the front desk of the motel and learned that Elvik was the guest associated with that vehicle. Shortly thereafter, the person at the

2

front desk called the room in which Elvik and his girlfriend were staying and told him to flee. Elvik and his girlfriend left the room. Elvik jumped from the balcony. Although his girlfriend was promptly apprehended, Elvik evaded law enforcement personnel for the next 14 hours. During that time, he hid the victim's handgun and money clip.

4.  Elvik testified at trial that he later went back and retrieved the handgun because he "didn't want nobody to find it. I didn't want some little kid to find it, or shoot, you know, or anything like that."

5.  Upon being detained, but prior to his arrest, Elvik gave a false name to the police. He later told them his actual name.

6.  After being apprehended, and given a Miranda warning, Elvik initially denied any recollection of the shooting. He stated that he had taken LSD and that this likely clouded his memory. Later in that interrogation, Elvik admitted to shooting the victim. At trial, Elvik stipulated that a blood test showed that he was not under the influence of LSD, and he testified that he had lied when he told the police otherwise.

7.  During his interrogation, Elvik asked whether his actions in Nevada would result in his confinement in a juvenile hall in Nevada or

3

California. This showed sophistication about the link between where a crime is committed and the place of any resulting confinement.

8. During his interrogation, Elvik stated that he had considered leaving the victim's handgun with Elvik's friend Stephen. He stated, "I didn't want to give it to [Stephen] because I guess he's like on probation for doing drugs or something. So I didn't want him to get in trouble for it but, you know?" He stated that he then decided to give the gun to Stephen with the expectation that Stephen would "take it over to [Elvik's] mom's office or whatever or the police station or whatever he's going to do with it."

9. At the time of the shooting, Elvik was 14 years and 11 months old. Thus, within a month he no longer would have qualified for the instruction under Nev. Rev. Stat. § 194.010(2).

In my view, a consideration of the other evidence in the record does not show that the totality of the evidence was "equally balanced" such that a judge could be in equipoise as to the issue of harmless error. Elvik relies on the following evidence to support his contrary position:

4

1. During his interrogation, he referred to his mother, who had disowned him and denied his request to return to her in California, by using a crude expletive;

2. He stated that he might not have a long life ahead of him because there might be "some big earthquake" and he might "fall in the crack and then []die";

3. He answered some questions with "ah huh" instead of "yes" during his interrogation;

4. He did not surrender to the police because he was "scared" and did not "think anyone would believe" him, something consistent with the recognition that he knew that his conduct was wrongful;

5. During the interrogation, after being told that "everybody's going to know exactly what happened" and that this was Elvik's "chance to fill in, maybe, a couple of little minor details," Elvik asked "why does it matter, whatever I tell you?" However, in context, these words

5

demonstrate that Elvik was asking why he needed to state what he had done given the evidence the police already had collected[1]; and

6.      At the conclusion of the initial interrogation, Elvik asked if he would be sent to juvenile hall in Nevada or California. As stated above, this reflects sophistication. Moreover, even if this implied that Elvik misunderstood the seriousness of the punishment that might be imposed for killing the victim, it did not imply that he did not know that his conduct was wrongful.

I agree with the majority that, "[i]nstead of weighing the evidence, we must ask whether the error was substantial and injurious." However, to make that determination, it is necessary to consider the effect of the error in light of all the evidence presented to the jury. The question is not whether the jury was "right in

---

[1]After being asked to "fill in the little details" because the police "d[id]n't know exactly, you know, step by step what happened," Elvik asked, "Well, what does it matter anyway[?]" EOR 1517. After being told that what happened was not "going to be a real big mystery," Elvik asked, "Yeah, I know, so why . . . why does it matter, whatever I tell you?" EOR 1511. Elvik later stated, "Well . . . well, you obviously already know what happened, so what does it matter what I say?" EOR 1520. Subsequently, after being told that his girlfriend had stated that Elvik told her that he shot the victim, Elvik responded, "It doesn't matter anyways." EOR 1527. Later, after being asked whether the victim fell on his back or on his stomach after being shot, Elvik stated, "So, even if I do know, what is it . . . who cares?" EOR 1528. After being told that things were "f***** right now" and that they were "going to stay that way for awhile," Elvik asked, "So what's the difference if they're going to stay like that?" *Id.*

6

their judgment" but is, instead, "what effect the error had or reasonably may be taken to have had upon the jury's decision." *Kotteakos*, 328 U.S. at 764. This analysis "must take account of what the error meant to [the jury], not singled out and standing alone, but in relation to all else that happened." *Id.*

I agree with the majority that this analysis is not a sufficiency of the evidence test. *See id.* at 765. However, all relevant record evidence should be considered. A conviction may not be overturned on "mere speculation that the defendant was prejudiced by trial error"; actual prejudice must be suffered. *Calderon v. Coleman*, 525 U.S. 141, 146 (1998); *see also Fry v. Pliler*, 551 U.S. 112, 119 (2007); *Brecht*, 507 U.S. at 621.

For these reasons, which are based on a review of the relevant record, I am not persuaded that Elvik suffered actual prejudice because the jury instruction that he requested was not presented. Given the evidence at trial, I respectfully disagree that showing Elvik understood the wrongfulness of his actions would have been a "daunting" task. Instead, a reasonable jury could have reached only the contrary conclusion.

For these reasons, I respectfully dissent.